NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0683n.06

No. 10-4131

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jun 28, 2012***

LEONARD GREEN, Clerk

DANIEL AGUILAR-ENRIQUEZ,                    )
                                            )        ON APPEAL FROM THE
            Petitioner,                     )        BOARD OF IMMIGRATION
                                            )        APPEALS
v.                                          )
                                            )              O P I N I O N
ERIC H. HOLDER, JR., Attorney General,      )
                                            )
            Respondent.                     )
                                            )

BEFORE:    COLE and McKEAGUE, Circuit Judges; and ZATKOFF, District Judge.[*]

**ZATKOFF, District Judge.** Petitioner Daniel Aguilar-Enriquez, a native and citizen of

Mexico, appeals a decision of the Board of Immigration Appeals ("BIA") which affirmed an

immigration judge's decision that Petitioner was (1) inadmissible under 8 U.S.C.

§ 1182(a)(9)(B)(i)(II); (2) ineligible for a waiver of admissibility under 8 U.S.C. § 1182(a)(9)(B)(v);

and (3) ineligible to adjust status under the Legal Immigration Family Act ("the LIFE Act"), 8 U.S.C.

§ 1255(i). In its decision, the BIA relied on its prior holding in *Matter of Lemus-Losa*, 24 I. & N.

Dec. 373 (BIA 2007), wherein the BIA interpreted the interplay between § 1255(i) and

§ 1182(a)(9)(B)(i)(II). Because we find the BIA's prior interpretation in *Matter of Lemus-Losa*

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District
of Michigan, sitting by designation.

reasonable, we affirm the BIA's decision finding that Petitioner was ineligible for adjustment of status under § 1255(i) due to his inadmissibility under § 1182(a)(9)(B)(i)(II).

I.

The facts are undisputed. Petitioner is a native and citizen of Mexico who entered the United States without inspection in April 1999. He returned to Mexico in December 2003. Six months later, Petitioner reentered the United States without inspection in June 2004. Petitioner has remained in the United States since his reentry.

In February 2007, Petitioner filed an application for adjustment of status ("I-485") pursuant to § 1255(i) based on an approved I-130 application. The I-130 application was filed by Petitioner's father, who is a United States citizen, on September 10, 1992. Petitioner was seeking to change his status from an illegal alien to that of an alien lawfully admitted as a permanent resident. Petitioner also sought a waiver of inadmissibility pursuant to § 1182(a)(9)(B)(v), to waive the ground of inadmissibility for unlawful presence under § 1182(a)(9)(B)(i)(II). Petitioner contended that he was entitled to the waiver of inadmissibility because his removal would cause extreme hardship to his father, who remains in the United States and suffers from Parkinson's disease.

On July 24, 2007, Petitioner received notice that removal proceedings were being initiated before the immigration court because Petitioner was in violation of 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being legally admitted or paroled. On October 31, 2008, the immigration judge ("IJ") rendered a decision. The IJ found the Petitioner's I-485 application was properly based on the I-130 application filed by Petitioner's father. Petitioner, however, had admitted that he illegally reentered the United States in June 2004.

Based on the illegal reentry, the IJ found that Petitioner was not eligible for adjustment under § 1255(i) because he was not admissible under § 1182(a)(9)(B)(i)(II). The IJ based his finding on the fact that Petitioner entered the United States illegally in 1999 and was then continuously present in the United States until December 2003—a period in excess of one year—before leaving the United States and illegally reentering in June 2004. Turning to Petitioner's waiver of admissibility under § 1182(a)(9)(B)(v), the IJ noted that the section provides the Attorney General with sole discretion to waive inadmissibility if the refusal of admission to an illegal alien would result in "extreme hardship" to that alien or legal resident spouse or parent of the alien. Taking into consideration the testimony that Petitioner's father requires around the clock care due to Parkinson's disease, the IJ denied the waiver of admissibility. The IJ explained that the refusal of admission to Petitioner would certainly create hardship for Petitioner's father, but the evidence failed to show that it would cause "extreme hardship" as required under § 1182(a)(9)(B)(v). Petitioner's application for voluntary departure was denied and he was ordered to be removed to Mexico.

On November 28, 2008, Petitioner appealed the IJ's decision to the BIA, alleging that the IJ erred in denying Petitioner's I-485. In a written opinion, the BIA affirmed the IJ's decision on August 18, 2010. The BIA held that Petitioner was eligible under § 1255(i) to adjust status to that of a legal resident, if he could demonstrate admissibility. The BIA found that Petitioner could not demonstrate admissibility because he was inadmissible under § 1182(a)(9)(B)(i)(II). In stating such, the BIA cited its prior decision in *Matter of Lemus-Losa*, 24 I. & N. Dec. 373 (BIA 2007). The BIA continued its analysis to determine whether Petitioner was entitled to a waiver of the inadmissibility requirement of § 1182(a)(9)(B)(i)(II) pursuant to § 1182(a)(9)(B)(v). The BIA, however, agreed

with the IJ that he was not entitled to a waiver because the potential hardship to Petitioner's father did not rise to the level of "extreme hardship" required under § 1182(a)(9)(B)(v). Petitioner now appeals the BIA's decision affirming the IJ's decision ordering Petitioner be removed to Mexico because he was ineligible to adjust status under § 1255(i) due to his inadmissibility under § 1182(a)(9)(B)(i)(II).

II.

We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a). Where the BIA has reviewed the decision of an IJ and then issued a separate opinion, we review the BIA's decision as the agency's final order. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). When the issue raised on appeal involves the BIA's interpretation of immigration statutes, we review the BIA's interpretation *de novo*, *id.*, and analyze its interpretation under the principles set forth in *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 844 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

Under *Chevron*, we first must examine the statute at issue and determine if Congress's intent is clear from the statute's language. *Chevron*, 467 U.S. at 842–43. Where there is no ambiguity and Congress's intent is clear, we owe no deference to the BIA's interpretation and apply the plain meaning of the statute. *Id.* If the statute is ambiguous, we next analyze whether the BIA's interpretation of the statute is reasonable. The BIA's interpretation is left undisturbed if it is reasonable and "'based on a permissible construction of the statute.'" *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843). *See Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908–09 (6th Cir. 2008); *Morgan*, 507 F.3d at 1057.

III.

*A.     Statutory Framework*

This appeal involves the interplay of § 1255(i) and § 1182(a)(9)(B)(i)(II). Section 1255(i)

permits an alien illegally present in the United States to pay a $1,000 fee and file an application with

the Attorney General to adjust status to a legal permanent resident if the alien is a beneficiary of a

"petition for classification under section 1154" that was filed with the Attorney General before April

30, 2001. 8 U.S.C. § 1255(i)(1). After receipt of the application and fee, the Attorney General may

adjust the status of the alien if:

> (A) the alien is eligible to receive an immigrant visa and is *admissible to the United States for permanent residence*; and
>
> (B) an immigrant visa is immediately available to the alien at the time the application is filed.

8 U.S.C. § 1255(i)(2)(emphasis added).

Section 1182(a)(9)(B)(i)(II) sets forth a class of aliens ineligible for visas or admissions. The

relevant portions of § 1182(a) state:

> (a) Classes of aliens ineligible for visas or admission
>
> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
>
> * * *
>
> (9) Aliens previously removed
>
> * * *
>
> (B) Aliens unlawfully present

- 5 -

> (i) In general
>
> Any alien (other than an alien lawfully admitted for permanent residence) who—
>
> * * *
>
> (II) has been unlawfully present in the United States for one year or more, and who again *seeks admission* within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.

8 U.S.C. §1182(a) (emphasis added). The language in § 1182(a)(9)(B)(i)(II) is commonly referred to as the 10 year bar.

B.    BIA Precedent

While neither statute expressly indicates whether the 10 year bar in § 1182(a)(9)(B)(i)(II) excludes an alien from being eligible to adjust status under § 1255(i), the BIA has addressed this issue in *Matter of Lemus-Losa*. *Matter of Lemus-Losa,* 24 I. & N. Dec. at 381. In *Matter of Lemus-Losa*, the respondent, a native and citizen of Mexico, was illegally present in the United States for two years before returning to Mexico. 24 I. & N. Dec. at 374. Similar to this case, the respondent then illegally reentered the United States two years later and subsequently applied for adjustment of status under § 1255(i) based on an I-130 filed by the respondent's father. *Id.*

Turning to whether the respondent may adjust status under § 1255(i) in light of the respondent's inadmissibility under § 1182(a)(9)(B)(i)(II), the BIA held that the 10 year bar prevented the respondent from adjusting status to that of an alien lawfully admitted for permanent residence under § 1255(i). *Id.* at 377. Relying on *Matter of Briones*, 24 I. & N. Dec. 355, the BIA stated that it found:

> no reason to distinguish between aliens who are inadmissible under [§ 1182](a)(9)(C)(i)(I) of the Act for making or attempting to make an illegal reentry into the United States following a prior period of more than 1 year of unlawful presence, and aliens who, like the respondent, accrued more than 1 year of unlawful presence, illegally reentered the country, and then sought admission through adjustment of [status] within the United States. As we stated in *Matter of Briones*, the plain language of [§ 1255](i)(2)(A) of the Act unambiguously requires an applicant for adjustment of status to prove that he is 'admissible to the United States for permanent residence.' Aliens who are inadmissible under [§ 1182](a)(9)(B)(i)(II) of the Act necessarily fail to meet that requirement, absent an available waiver.

*Id.* at 378.

The BIA further concluded that construing § 1182(a)(9)(B)(i)(II) to cause aliens to be inadmissible under section § 1255(i) did not lead to absurd results as it would if the inadmissibility requirement under the more general § 1182(a)(6)(A)(i)—those who are inadmissible for merely being present "without being admitted or paroled"—made an alien ineligible for relief under § 1255(i). *Id.* at 378–79. The BIA distinguished § 1182(a)(9)(B)(i)(II) and § 1182(a)(9)(C)(i)(I) from § 1182(a)(6)(A)(i). *Id.* at 379. According to the BIA, § 1182(a)(9)(B)(i)(II) punishes aliens who seek admission after having previously accrued at least one year of unlawful presence, whereas inadmissibility under § 1182(a)(6)(A)(i) is based merely on an alien's presence in the United States without inspection or admission. *Id.* The BIA also noted the different purposes of § 1182(a)(9) and § 1182(a)(6), noting that § 1182(a)(9) was created "'to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully admitted thereafter.'" *Id.* (quoting *Matter of Rodarte*, 23 I. & N. Dec. 905, 909 (BIA 2006)).

The BIA noted "that barring individuals who are inadmissible under [§ 1182](a)(9)(B)(i)(II) from adjusting status under [§ 1255(i)]" appears to comport with the purpose of § 1255(i)—to extend admissibility to aliens who have "'played by the rules'" to be able to reunite with their families that live in the United States. *Id.* at 379 n.6 (citation omitted). The BIA ultimately affirmed the IJ's decision that the respondent was ineligible for adjustment of status under § 1255(i) because of the respondent's inadmissibility under section § 1182(a)(9)(B)(i)(II) and because he had failed to show that he was eligible to waive such inadmissibility under § 1182(a)(9)(B)(v).

C.      *Whether the Relationship Between § 1255(i) and § 1182(a)(9)(B)(i)(II) is Unambiguous*

Our analysis begins with whether § 1255(i) is ambiguous as it relates to § 1182(a)(9)(B)(i)(II). In examining these statues, this Court and other circuits have observed that it is not possible to apply the plain language of § 1255(i) to § 1182(a)(6)(A)(i) and, for the same reasons, § 1182(a)(9)(B)(i)(II), without concluding that § 1255(i) is ambiguous. *See Ramirez-Canales*, 517 F.3d at 908; *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1148 (10th Cir. 2011); *Renteria-Ledesma v. Holder*, 615 F.3d 903, 908 (8th Cir. 2010); *Ramirez v. Holder*, 609 F.3d 331, 336 (4th Cir. 2010); *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1008 (10th Cir. 2009), cert. denied, 130 S. Ct. 3505 (2010); *Mora v. Mukasey*, 550 F.3d 231, 237–38 (2d Cir. 2008); *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005). Section 1255(i) sets forth the conditions for eligibility to adjust status of an alien who entered without inspection and is admissible to the United States for permanent residence. Yet, § 1182(a)(6)(A)(i) states that any alien present in the United States without being admitted or paroled is inadmissible.

Section 1182(a)(9)(B)(i)(II) is similarly at odds with § 1255(i) because an alien that meets the admissibility requirements under § 1255(i), but who has been unlawfully present in the United States for one year or more and seeks admission within 10 years after leaving the United States is inadmissible. Thus, the qualifying condition to adjust status under § 1255(i) (i.e., an alien who enters without inspection) is the same condition under § 1186(a)(6)(A)(i), and a component of the requirements in § 1182(a)(9)(B)(i)(II), that makes an alien inadmissible. Based on a plain reading of § 1255(i), it is not clear whether § 1255(i) waives an alien's unlawful entry as a ground of inadmissibility. As such, we find that the interplay between the eligibility to adjust status under § 1255(i) and the inadmissibility grounds under § 1182(a)(9)(B)(i)(II) are ambiguous.

D.     *Whether the BIA's Interpretation of the Relationship Between § 1255(i) and § 1182(a)(9)(B)(i)(II) is Reasonable*

Having determined that the relationship between the two statutes is ambiguous, we turn to whether the BIA's interpretation of the statutes in *Matter of Lemus-Losa* is reasonable. *Chevron*, 467 U.S. at 843. The Court must give proper judicial deference to the BIA's interpretation if it is reasonable. This "is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." *Aguirre-Aguirre*, 526 U.S. at 425. As previously set forth, the BIA determined that aliens similar to Petitioner are not eligible to adjust status under § 1255(i) if the aliens are inadmissible under § 1182(a)(9)(B)(i)(II), but aliens inadmissible under § 1182(a)(6)(A)(i) are eligible to adjust status.

The Sixth Circuit has not addressed the precise issue relating to whether the inadmissibility ground in § 1182(a)(9)(B)(i)(II) precludes adjustment of status under §1255(i). Petitioner points this

Court to the Seventh Circuit's decision reviewing the BIA's decision. *See Lemus-Losa v. Holder*, 576 F.3d 752 (7th Cir. 2009). In its review, the Seventh Circuit found the BIA's interpretation unreasonable. Petitioner contends that this Court should follow the Seventh Circuit's rationale. After a thorough review of the BIA's decision, we find the BIA's interpretation reasonable and decline to follow the Seventh Circuit's holding in *Lemus-Losa*.

The BIA aptly supported its reasons to distinguish § 1182(a)(6)(A)(i) from § 1182(a)(9)(B)(i)(II) and § 1182(a)(9)(C)(i)(I). The BIA made clear that not construing the savings clause to permit aliens inadmissible under § 1182(a)(6)(A)(i) to adjust status under § 1255(i) would result in absurd consequences because § 1255(i) would be rendered meaningless in light of § 1182(a)(6)(A)(i). Any alien that qualified for adjustment of status under § 1255(i) in turn would be inadmissible under the language in § 1182(a)(6)(A)(i). In *Matter of Briones*, the BIA also explained that this contradiction did not exist when § 1255(i) was first enacted, because at that time, an alien who entered the United States without inspection was deportable rather than inadmissible. *Matter of Briones*, 24 I. & N. Dec. at 362–63. Thus, the BIA reasonably construed the savings clause in § 1182(a) to waive the inadmissibility requirement under § 1182(a)(6)(A)(i) with respect to § 1255(i). *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) ("[W]e must, if possible, construe a statute to give every word some operative effect.").

The BIA distinguished § 1182(a)(9)(B)(i)(II) from requiring a similar construction. The BIA found that it could give meaning to the plain language in § 1255(i) and § 1182(a)(9)(B)(i)(II) without the same absurd results that would occur between §1255(i) and § 1182(a)(6)(A)(i). As the legislative history indicates, the provisions in § 1182(a)(9) concern a more narrow subset of aliens. *See Matter*

*of Briones*, 24 I. & N. Dec. at 358 (noting the purpose of § 1182(a)(9)(C) "was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed."); *Matter of Rodarte-Roman*, 23 I. § N. Dec. at 909 ("It is recidivism, and not mere unlawful presence, that [§ 1182](a)(9) is designed to prevent."). Relying on the legislative history, the BIA pointed to the fact that § 1182(a)(9)(B)(i)(II), like § 1182(a)(9)(C)(i)(I), addresses a subset of aliens that are unlawfully present and have committed prior immigration violations. The BIA also found that the purpose of § 1182(a)(9) was to punish aliens who had committed prior immigration violations and make it more difficult for such aliens to be admitted into the United States. *Matter of Lemus-Losa*, 24 I. & N. Dec. at 378–79; *see also Ramirez-Canales*, 517 F.3d at 909–10 (stating that the history of § 1255(i) supports an interpretation of the statute that aliens illegally present may adjust status, but an alien who leaves the country and then reenters the country to adjust status was not a set of aliens that § 1255(i) was designed to assist); *Matter of Rodarte-Roman*, 23 I. § N. Dec. at 909. The BIA's decision to distinguish § 1182(a)(9) and § 1182(a)(6) on the ground that § 1182(a)(9)—unlike § 1182(a)(6)—targets prior immigration violators is reasonable.

The BIA further explained that when Congress has extended eligibility for adjustment of status to aliens otherwise inadmissible in other circumstances, Congress has provided an explicit waiver of the inadmissibility requirements under § 1182(a)(9). *Matter of Lemus-Losa*, 24 I. & N. Dec. at 378 (noting that Congress's failure to expressly provide an exception to § 1182(a)(9)(B)(i)(II) for aliens adjusting status under § 1255(i) anywhere in the statutes was significant). As the BIA observed, when Congress enacted other special remedial legislation for certain aliens, Congress

expressly negated the inadmissibility grounds found in § 1182(a)(9)(B). *Id.* at 367–68 (discussing

Congress's act of expressly waiving § 1182(a)(9)(B) with respect to admissibility of certain aliens

under the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat.

2193, as amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997), and the Haitian Refugee

Immigration Fairness Act of 1998, tit. IX, Pub. L. No. 105-277, 112 Stat. 2681-538).

The fact that Congress did not explicitly waive the inadmissibility requirements under

§ 1182(a)(9) for § 1255(i), but has specifically waived § 1182(a)(9) in other contexts may indicate

Congress did not intend to expand § 1255(i) to this narrower subset of aliens. Where Congress

creates such ambiguity between the statues, it is reasonable for the BIA to construe the statutes in

a manner that limits the eligibility to adjust status to a group of aliens that appears Congress did not

contemplate as being included in § 1255(i). It is within Congress's power to specifically enumerate

admissibility requirements or provide waivers for certain inadmissibility grounds, if it so chooses.

Moreover, whereas § 1182(a)(6)(A)(i) created an absolute bar on admissibility if the alien

was unlawfully present in the United States, thus supporting the BIA's reasoning that the savings

clause would have to waive admissibility under this section to provide any meaning to § 1255(i),

this does not hold true for § 1182(a)(9)(B)(i)(II). Unlike the absolute bar in § 1182(a)(6)(A)(i),

§ 1182(a)(9)(B)(i)(II) only punishes an alien by barring that alien from applying for adjustment of

status for 10 years.

Furthermore, § 1182(a)(9)(B)(i)(II) is not completely at odds with § 1255(i)'s goal of family

reunification for illegal entrants who have otherwise "played by the rules." § 1182(a)(9)(B)(v)

allows an alien that is inadmissible under § 1182(a)(9)(B)(i)(II) to waive such inadmissibility if the

- 12 -

alien's removal would cause "extreme hardship" to the alien's family that is legally present in the United States. Thus, an alien inadmissible under § 1182(a)(9)(B)(i)(II) may be eligible to adjust status under § 1255(i) if the alien is eligible for a waiver of inadmissibility on grounds that are consistent with the goal of § 1255(i).

For the reasons stated above, we find that the BIA's interpretation of § 1255(i) and § 1182(a)(9)(B)(i)(II) is reasonable.

IV.

Accordingly, the BIA's decision is AFFIRMED.